UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAXUM ENTERPRISES LLC d/b/a | § | |
| PILOT THOMAS LOGISTICS, a | § | |
| Delaware Limited Liability Company, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-0687-B |
| | § | |
| AUTOMOTIVE FLEET ENTERPRISES, | § | |
| INC.; ASSOCIATED FLEET CORP; | § | |
| LOUIS W. SPIRO; JOSEPH R. WIHBEY; | § | |
| and WESTERN SURETY COMPANY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Western Surety Company's (Western) Rule 12(b)(6) Motion

to Dismiss. Doc. 67. For the reasons stated, the Court **GRANTS** Western's Motion to Dismiss.

## I.

## BACKGROUND[1]

The dispute arises from Plaintiff Maxum Enterprises, LLC's (doing business as Pilot Thomas

Logistics (PTL))claim that Defendants Automotive Fleet Enterprises, Inc. (AFE), Associated Fleet

Corp (AFC), Louis W. Spiro, and Joseph R. Wihbey (hereinafter the "non-surety Defendants") took

possession of PTL's trucks without paying for them. In 2016, PTL discovered that the non-surety

Defendants misappropriated 39 trucks valued at roughly $4.34 million. Doc. 46, Am. Compl., ¶¶

---

[1]The Court draws its factual history from the parties' pleadings. Any contested fact is identified as the
contention of a particular party.

34–35, 128. PTL discovered the theft and subsequently entered into an agreement with Spiro's company, AFE, whereby AFE would pay PTL approximately $2.03 million for the trucks. *Id.* ¶ 107. AFE failed to make any payments. *Id.* ¶¶ 115–16.

Instead, the non-surety Defendants allegedly sold the trucks to third parties using fraudulent "bonded titles" by virtue of surety bonds obtained from Defendants Merchants Bonding Company and Western Surety Company through a title laundering scheme. *Id.* ¶¶ 36–43. In essence, according to Plaintiffs, Wihbey and Spiro falsely claimed to the Florida Department of Motor Vehicles that the titles had been lost. *Id.* ¶¶ 38, 40. They then fraudulently obtained duplicate titles claiming that the trucks were worth only $1,000 to $2,000 each based on fraudulent bills of sale reflecting that AFE sold each of the 39 trucks to Wihbey's company, AFC. *E.g., id.* ¶¶ 37, 48; *id.* at 25–27 (chart summarizing bill of sale and bond amounts for 31 of the trucks). The trucks however were generally appraised at between $50,000 to $130,000 each. *Id.* at 25–27; *see also, e.g., Id.* ¶ 127.

PTL alleges that Western and its agents furthered the scheme by failing to consult a current national appraisal guide (*e.g.,* Kelly Blue Book or National Automobile Dealers Association (NADA)) to determine the fair market value of the vehicles and the amount of the required bond, as required on the face of each bond and as its agents represented they had done. *Id.* ¶ 37, 120. Instead, Western doubled the $1,000 to $2,000 valuation provided by the non-surety Defendants and issued surety bonds in that amount despite the fact that Florida law required that surety bonds be set at twice the fair market value. *Id.* ¶¶ 119–122.

PTL originally brought suit on March 22, 2018, against just Spiro and his company AFE. Doc. 1, Compl. Then, after PTL took depositions, received written discovery, and conducted its own independent investigation, PTL uncovered the allegedly fraudulent title scheme involving Western

and Merchants Bonding. *See* Doc. 44, Pl.'s Mot. for Leave to Am. Compl., 1. Thus, on October 12, 2018, PTL filed its First Amended Complaint adding the two surety companies and bringing claims against them for negligence and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Doc. 46, Am. Compl., ¶¶ 156–69.

PTL has since settled its claims with Merchants Bonding, and thus, Merchants Bonding is no longer a party to this case. Doc. 122, Joint Stipulation of Dismissal. However, Western remains in this case and of the 39 trucks at issue in this case, Western issued surety bonds for 9 of them for a penal sum of $30,000. Doc. 69, Def.'s Mot. to Dismiss, 3. In its Rule 12(b)(6) Motion to Dismiss, Western seeks dismissal of PTL's FDUTPA claim arguing that the FDUTPA does not apply to sureties and dismissal of PTL's negligence claim arguing that Western had no duty to determine the value of the vehicles. Doc. 69, Def.'s Mot. to Dismiss, 4–5. PTL filed its Response arguing that Western's Motion should be denied or alternatively that PTL should be allowed to amend and seek indemnity from Western.[2] Doc. 80, Pl.'s Resp., 1. Western filed its Reply. Doc. 90, Def.'s Reply. Western's Motion is therefore ripe for the Court's review.

## II.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which

---

[2] On March 19, 2019, PTL filed a Motion for Leave to File a Second Amended Complaint. *See* Docs. 128, 129. Relevant to this Motion to Dismiss, PTL seeks to amend its First Amended Complaint and add a claim for indemnification against Western to the extent that AFE fails to fully indemnify PTL. Doc. 128-4, Proposed Second Am. Compl., ¶¶ 167–71.

relief can be granted." *Id.* 12(b)(6). To survive a 12(b)(6) motion, "enough facts to state a claim to relief that is plausible on its face" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

The Fifth Circuit has held that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (internal citation omitted). Essentially, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

## III.

## ANALYSIS

A.    *Florida Deceptive and Unfair Trade Practices Act (FDUTPA)*

Western first seeks dismissal of PTL's FDUTPA claim, arguing that as a matter of law sureties are not subject to liability under the FDUTPA. Doc. 69, Def.'s Mot. to Dismiss, 4–5. Specifically, Western argues that because § 501.212(4)(d) of the FDUTPA provides that the statute does not

apply to "[a]ny person or activity" regulated by the Department of Financial Services, Fla. Stat. § 501.212(4)(d); and because the Florida Insurance Code and Department of Financial Services governs surety companies and surety insurance, *id*. §§ 624.03, 624.6011; Western is thus not subject to any FDUTPA liability. PTL counters that the Florida Department of Financial Services does not specifically regulate the "activity" of "surety insurance" involving bonded titles for motor vehicles; instead these types of bonds are regulated by the Florida Department of Highway Safety and Motor Vehicles (Florida DMV), thus the exemption cannot apply. Doc. 80, Pl.'s Resp., 13 (citing Fla. Stat. §§ 624.606 (defining types of "surety insurance"); 319.001, 319.23(7)(a)(1) (stating that surety bonds must be in a "form prescribed by the [Florida DMV]")).

Ultimately, the Court agrees with Western and finds that it is not subject to liability under the FDUTPA. PTL has set forth no case law showing courts narrowly interpreting the exemption on which Western relies on or imposing FDUTPA liability against a surety company offering certain types of surety insurance. Instead, the exemption at issue in this case applies to any "persons *or* activity" regulated by the Department of Financial Services. Fla. Stat. § 501.212(4)(d) (emphasis added). Therefore, "since the introductory clause of § 501.212(4) is stated in the disjunctive rather than the conjunctive, ordinary construction of the statute would suggest that to qualify for the exemption a party may be either a person subject to regulation by the listed authorities contained in the subparts or one engaged in activity subject to regulation by authorities listed in the subparts." *Nino v. Flagstar Bank, FSB*, 2017 WL 9802627, at *5 (E.D. Mich. Dec. 31, 2017) (interpreting the same Florida statute as it applies to banks).

Florida courts have held that "[a] surety is considered . . . to fit within the definition of insurer and to be subject to the same regulations as insurers in the Florida Insurance Code." *Snow*

*v. Jim Rathman Chevrolet, Inc.*, 39 So. 3d 368, 370 (Fla. Dist. Ct. App. 2010) (citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins.*, 945 So. 2d 1216, 1224 (Fla. 2006) (quoting Fla. Stat. § 624.03, which defines an insurer as "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity")). Thus, Florida courts that have considered potential FDUTPA claims against surety companies like Western have held that whether the FDUTPA applies does not turn on the type of surety insurance offered. *See Gustafsson v. Aid Auto Brokers, Inc.*, 212 So. 3d 405, 408 (Fla. Dist. Ct. App. 2017) (citing *Hubbel v. Aetna Cas. & Sur. Co.*, 758 So.2d 94, 94–98 (Fla. 2000)); *Sanchez v. AN Luxury Imps. of Pembroke Pines, Inc.*, 216 So. 3d 723, 729 (Fla. Dist. Ct. App. 2017) ("section 501.212(4)(d) specifically precludes application of any section within the FDUTPA statutes to sureties."). Therefore, because it is clear that Western is an "insurer" as defined by the Florida Insurance Code and subject to regulation by the Department of Financial Services, Western is exempt from liability under the FDUTPA. Thus, the Court **GRANTS** Western's Motion to Dismiss and **DISMISSES with prejudice** PTL's FDUTPA claim.

B.    *Negligence*

Western next seeks dismissal of PTL's negligence claim arguing that PTL has failed to show that Western had a duty to PTL to ensure that the value of the vehicle was correct. Doc. 69, Def.'s Mot. to Dismiss, 5–8. Western instead argues that Florida's statutory scheme placed the duty on the Florida DMV to determine the value of the vehicles and approve or not approve the bonded title forms AFC submitted in deciding whether to issue a new title. *Id.*

To establish a claim for negligence in Florida, a plaintiff must show:

1.    A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on the [defendant's] part to conform to the standard required: a breach of the duty . . . .

3. A reasonably close causal connection between the conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause," and which includes the notion of cause in fact.

4. Actual loss or damage . . . .

*U.S. v. Stevens*, 994 So. 2d 1062, 1066 (Fla. 2008) (alterations in original) (quoting *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2004)). Florida has adopted the Restatement (Second) of Torts, which, "recognizes four sources of duty: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla. 1992) (citing Restatement (Second) of Torts § 285 (1965)). Here, PTL asserts that Western's duty arises under the last category—*i.e.*, that Western's duty arises because of the actions it failed to undertake in issuing the title bonds. Doc. 80, Pl.'s Resp., 6. "To determine whether a duty sufficient to support a negligence claim exists, one begins by determining whether the defendant by its conduct created a foreseeable zone of risk." *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Maryland*, 917 So. 2d 368, 375 (Fla. Dist. Ct. App. 2005) (rejecting the idea that a surety has a duty to third parties as a result of its underwriting activities). If no such duty exists, PTL's negligence claim fails.

Here, PTL posits that the standard of conduct, risk of harm, and class of people within the foreseeable zone of risk were made clear on the face of the Title Surety Bond for a Motor Vehicle Form that Western and AFC had to complete in order for AFC to receive a certificates of title on the allegedly stolen vehicles from the Florida DMV. Doc. 80, Pl.'s Resp, 6. More specifically, PTL

asserts that read together the form states that "the sureties were required to consult a 'current national appraisal guide (Kelly Blue Book or NADA)' and to issue a bond that is 'twice the value of the vehicle' as established in that current national appraisal guide, in order to protect 'all prior owners and lienholders . . . of the vehicle . . . against any expense, loss, or damage' resulting from the issuance of a bonded title for a vehicle for which the applicant was not the proper owner." *Id.* at 6–7 (quoting Doc. 80-1, Ex. A, Fla. Title Surety Bond Form). PTL therefore concludes that by failing to consult a current national appraisal guide in issuing a title bond of sufficient value, but instead relying on the $1,000 to $2,000 fraudulent valuations provided by the non-surety Defendants, Western created a foreseeable zone of risk, which PTL, as the rightful owner of the vehicles, was within. Doc. 80, Pl.'s Resp, 7–8.

Western argues that despite the language in the state-mandated bond form, it is not the surety that has a duty to determine the value of the vehicle and thus the required penal sum of the bond, but the Florida DMV that ultimately determines the value. Doc. 69, Def.'s Mot. to Dismiss, 7. Western supports this assertion by pointing to the Florida statute that governs the issuance of these types of bonded titles. In relevant part, the statute provides that "[t]he bond must be . . . [i]n an amount equal to two times the value of the vehicle *as determined by the department* [(Florida DMV)]." Fla. Stat. § 319.23(7)(a)(4) (emphasis added). The statute places the onus on the Florida DMV to "use reasonable diligence in ascertaining whether or not the facts in the application are true; and, if satisfied that the applicant is the owner of the motor vehicle or mobile home and that the application is in the proper form, it shall issue a certificate of title." *Id.* § 319.23(5). And lastly, the statute states that "[a]n interested person has a right to recover on the bond for a breach of the bond's condition." *Id.* § 319.23(7)(b). However, "[t]he aggregate liability of the surety to all persons

may not exceed the amount of the bond." *Id.* Thus, reading these relevant sections together, Western argues that the duty was on the Florida DMV, using reasonable diligence, to approve or not approve the application for the issuance of a bonded title as well as to determine the value of the vehicle. Doc. 69, Def.'s Mot. to Dismiss, 8. Ultimately, the Court agrees with Western and finds that Western did not have a duty to PTL—a third party to the surety agreement between Western and AFC—to determine the value of the vehicles sufficient to give rise to a negligence claim.

PTL has failed to show and the Court has not found a single case in which a surety was held to have a duty to a third party other than performance on the bond according to its terms. In fact, case law generally states that surety companies like Western have limited duties to third parties such as PTL. For example, PTL cites *ZP No. 54 Limited Partnership v. Fidelity & Deposit Company of Maryland*, 917 So. 2d 368, 375 (Fla. Dist. Ct. App. 2005), for the proposition that a "person relying on [a] bond has the right to expect that the bond will be honored by its issuer according to its terms." However, in that case the court affirmed the trial court's finding of a lack of duty on the surety defendant's part and held that the only legal duty the surety had to third parties was to fulfill its express obligations under the bond. *Id.* at 374. Although this case involved a different type of surety bond, it is instructive because it also involved a plaintiff attempting to hold a surety company liable in tort based on its allegedly negligent underwriting activities and ultimate decision to issue the bond. *See id.* at 370.

More specifically, in *ZP No. 54* the plaintiff, a third-party property owner, brought suit for gross negligence and negligent misrepresentation against a surety company that issued a performance bond to a general contractor. *Id.* at 369–70. The property owner alleged that the surety company should not have issued the bonds at issue, should have known that the contractor was a sham, and

ultimately not bondable, and thus, should be liable in negligence for damages in excess of the bond amount. *Id.* at 370–71. The court however refused to find that the surety had a duty to a third party—even one that was named as obligee on the bond—growing out of the surety's underwriting activities because "[i]ssuing a bond based on bad underwriting does not create a foreseeable zone of risk because a person receiving the benefit of the bond simply does not have the right to rely on the competence of the underwriting." *Id.* The Court held that the plaintiff had the right to expect that the express obligations under the performance bond be honored, but not that the surety company be liable for damages in excess of the amount of the bond. *Id.*

Similarly here, the Court does not find that it is reasonable to place a duty on Western as to third parties arising out of its underwriting activities that is more expansive than what was provided for by the express terms of the bonds and that the Florida DMV ultimately approved. In interpreting the statute governing the issuance of these bonds in conjunction with the bond form at issue, the Court finds that the only duty Western owes is to honor the bond according to its terms—*i.e.*, pay the penal sum of the bond that the Florida DMV approved. The Court does not find that by issuing the bond, Western made an affirmative guarantee that the bond was being issued for twice the fair market value of the vehicle. The Florida DMV—as the agency tasked with issuing the certificates of title—had the responsibility of approving or denying these forms, and ultimately approved these forms according to their express terms.[3] As was the case in *ZP No. 54*, the Court finds that it is not

---

[3] Also, the fact that the Florida DMV was the entity that issued the bonded titles and allowed PTL to suffer damages raises an additional problem with PTL's purported negligence action—whether Western's failure to properly appraise the vehicles proximately caused PTL's losses. In *Shehab v. Alkausauneh*, a case involving a similar California statute involving bonded titles, the court held that a third party could not maintain a negligence action against a surety company based on its alleged failure to fully investigate the applicants applying for bonds and failure to obtain readily available information on the true titled owner of certain vehicles prior to its issuing the bonds in part because it was the California DMV that was responsible to

reasonable for PTL to rely on the competence of Western's underwriting activities.

In addition to the Court finding that Western did not have a duty to a third party such as PTL, the Court notes that "[t]he general rule recognized by the almost unanimous weight of authority in this country is that recovery on a penal bond is limited to the amount of the penalty named in the bond, with interest from the date of breach." *Travelers Indem. Co. v. Askew*, 280 So. 2d 469, 471 (Fla. Dist. Ct. App. 1973). "The only exception to the general rule is in those instances where the wording of the bond or the statute pursuant to which it was given indicates an intention to extend the liability of the bond beyond the maximum sum stated therein." *Id.*

Here, the statute specifically provides that "[t]he aggregate liability of the surety to all persons may not exceed the amount of the bond." Fla. Stat. § 319.23(7)(b). Therefore, the statute clearly indicates an intention that sureties are not to be held liable for more than the bond amount. As argued by Western, if the Court were to expand their liability past the penal sum of the bonds, it would be difficult for sureties to issue these bonds and set appropriate premium amounts. *See Hubbel v. Aetna Casualty & Surety Co.*, 758 So. 2d 94, 98 (Fla. 2000) (refusing to expand a surety company's liability beyond the sum of the bond and to include attorney's fees in part because "[i]f the obligation was as open-ended as asserted by the claimants, few sureties and no banks would provide the bond or letter of credit to make this statutory scheme work"). To do so would also render the language in the statute and on the bond form limiting the surety's maximum liability meaningless and allow a

---

ensure that the proper safeguards and procedures were being followed before issuing the titles, not the surety. 2008 WL 618643, at *4–5 (S.D. Ohio Feb. 29, 2008). Here too, it was the Florida DMV that had to ultimately approve the bonded title forms for the set amounts and determine whether to issue certificates of titles. In the end, the Florida DMV chose to approve the forms, and thus, it was the issuance of replacement titles, which proximately caused PTL's damages.

third party to contest the bond amount even after it was approved by the Florida DMV. Absent statutory language or case law to the contrary, the Court is not willing to expand liability on Western beyond the express terms of the bond.

Therefore, because the Court finds that as a matter of law Western did not have a duty to PTL with respect to its underwriting activities outside of paying the penal sum of the bond, PTL's negligence claim fails. Thus, the Court **GRANTS** Western's Motion to Dismiss and **DISMISSES with prejudice** PTL's negligence claim.

## IV.

## CONCLUSION

For the above-stated reasons, the Court **GRANTS** Western's Motion to Dismiss (Doc. 67) under Federal Rule of Civil Procedure 12(b)(6). Specifically, Plaintiff's FDUTPA and negligence claims are **DISMISSED with prejudice** because surety companies such as Western are exempt from FDUTPA liability and the Court does not find that Western owed PTL any duty besides performance of the bond according to its terms. However, the Court will allow PTL to amend its complaint, as proposed, *see generally* Doc. 128, Mot. for Leave to File Am. Compl., and bring a claim for indemnity against Western and AFC under the express terms of the bond form.

**SO ORDERED.**

**DATED: April 4, 2019.**

_____

**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**